[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-10453

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 23, 2008
THOMAS K. KAHN
CLERK

D.C. Docket No. 05-00062 CV-JTC-3

JOHNEL EDWARD TAYLOR,

                                        Petitioner-Appellant,

versus

WARDEN ROSE WILLIAMS,

                                        Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(May 23, 2008)**

Before TJOFLAT, ANDERSON and COX, Circuit Judges.

TJOFLAT, Circuit Judge:

The petitioner, Johnel Edward Taylor, is serving sentences in a Georgia

prison for murder and possession of a firearm. On July 8, 2005, he challenged the constitutional validity of his convictions in a petition for a writ of habeas corpus filed with the United States District Court for the Northern District of Georgia pursuant to 28 U.S.C. § 2254.[1] On October 26, 2006, the district court denied the writ as time-barred by the one-year statute of limitations created by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d)(1).[2] He thereafter filed a timely notice of appeal, and we granted his application for a certificate of appealability ("COA") as to one issue: whether the district court erred when it found that the Georgia procedural rule, which deems a petition for post-conviction relief filed when it is received and marked as filed by the clerk of the petitioned court, governs the date when AEDPA's one-year limitations period is tolled.

---

[1] 28 U.S.C. § 2254(a) provides that:

[t]he Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

[2] 28 U.S.C. § 2244(d)(1) states, in pertinent part:

A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation shall run from the latest of –
         (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review . . . .

## I.

On December 1, 1998, a Spalding County Superior Court jury found Taylor guilty of felony murder and possession of a firearm during the commission of a crime. The superior court thereafter sentenced him to life imprisonment on the murder charge and a consecutive five-year term for the firearm possession offense. His convictions and sentences were affirmed by the Georgia Supreme Court on July 5, 2000. Taylor v. State, 532 S.E.2d 395 (Ga. 2000). Taylor did not move the court for a rehearing or seek a writ of certiorari from the United States Supreme Court. Accordingly, his convictions became final on October 3, 2000. See Sup. Ct. R. 13 ("[A] petition for a writ of certiorari to review a judgment in any case, civil or criminal, entered by a state court of last resort . . . is timely when it is filed with the Clerk of this Court within 90 days after entry of judgment."); Bond v. Moore, 309 F.3d 770, 774 (11th Cir. 2002) (holding that AEDPA's statute of limitations does not begin to run until the 90-day window for seeking a writ of certiorari in the Supreme Court expires.).

On January 17, 2001, Taylor signed and deposited a pro se petition for a writ of habeas corpus, directed to the Superior Court of Chattooga County, into the prison mail system. The clerk of that court filed Taylor's petition on February 2, 2001. On August 26, 2002, following two evidentiary hearings, the superior court

denied relief. The Georgia Supreme Court denied Taylor a certificate of probable cause to appeal that decision on October 25, 2004.

On July 8, 2005, Taylor, proceeding pro se, signed the habeas petition now before us and presumably delivered it to the prison authorities for mailing. It was received by the clerk of the United States District Court for the Northern District of Georgia four days later.[3] Warden Williams, the respondent, moved the court to dismiss the petition as untimely, arguing that Taylor failed to file it within AEDPA's one-year limitations period. As noted above, the district court dismissed the petition as time-barred on October 26, 2006.

## II.

## A.

In this case, AEDPA's one-year limitations period began to run on October 3, 2000, the undisputed date that Taylor's convictions became final. See 28 U.S.C. § 2244(d)(1)(A). Thus, absent a tolling of the one-year limitations period, Taylor had until October 3, 2001, to file the instant petition.[4]

---

[3] Under the federal "mailbox rule," a pro se federal habeas petition is deemed to be filed on the date it is delivered to prison authorities for mailing. Alexander v. Sec'y, Dep't of Corr., No. 06-12501, slip op. at 2 n.4 (11th Cir. Apr. 8, 2008). After filing his petition, Taylor retained counsel and, on December 21, 2005, counsel filed an amended habeas petition.

[4] We review a district court's determination that a § 2254 petition is time-barred under AEDPA de novo. Wade v. Battle, 379 F.3d 1254, 1259 n.5 (11th Cir. 2004).

AEDPA's limitations period is tolled while "a properly filed application for State post-conviction or other collateral review . . . is pending." 28 U.S.C. § 2244(d)(2).[5] Taylor argues that we should use January 17, 2001, the date he signed his state habeas petition and deposited it into the prison mail system, as the date that the petition was properly filed for tolling purposes. Warden Williams responds that February 2, 2001, the date the clerk of the Superior Court filed Taylor's petition, is the appropriate date to begin tolling the limitations period. This distinction is of utmost importance. If tolling began on the date Taylor signed his petition, then only 362 days passed before he filed his federal petition.[6] However, if tolling began on February 2, 2001, when Taylor's state petition was filed by the clerk of the Superior Court, then 378 days elapsed, and the instant petition would be time-barred under AEDPA.[7] Our decision in this case,

_____

[5] In addition to the statutory tolling provision, we have recognized that equitable tolling is warranted "in rare circumstances." See Diaz v. Sec'y for Dept. of Corr., 362 F.3d 698, 700 (11th Cir. 2004). Because Taylor has not invoked this exception and it is not included within the COA, we do not address it. See Murray v. United States, 145 F.3d 1249, 1251 (11th Cir.1998) (holding that "appellate review is limited to the issues specified in the COA").

[6] This period of 362 days is calculated by taking the number of days from October 3, 2000, when Taylor's conviction became final, to January 17, 2001, when Taylor signed his state habeas petition (106 days), and adding to them the number of days that elapsed between October 25, 2004, when the Georgia Supreme Court denied Taylor's application for a certificate of probable cause to appeal, and July 8, 2005, when Taylor delivered his federal habeas petition to the prison authorities for filing (256 days).

[7] This period of 378 days is calculated by taking the number of days from October 3, 2000, when Taylor's conviction became final, to February 2, 2001, when the clerk of the

5

therefore, turns on when Taylor "properly filed" his state habeas petition, thereby tolling the one-year limitations period for filing his federal petition.[8]

B.

To determine when a state habeas petition has been "properly filed," we look to the applicable state law governing filings. See Artuz v. Bennett, 531 U.S. 4, 8, 121 S. Ct. 361, 364, 148 L. Ed. 2d 213 (2000); Wade v. Battle, 379 F.3d 1254, 1260 (11th Cir. 2004). At the outset, it is important to note that the particular question before us has not been addressed by the Georgia courts. See Wade, 379 F.3d at 1258 n.2 ("[W]e are aware of no Georgia court applying the mailbox rule to initial pro se state habeas petitions.").[9] A lack of explicit Georgia precedent on an issue, however, does not absolve us of our duty "to decide what the state courts would hold if faced with [the issue]." Arceneaux v. Texaco, Inc.,

---

Superior Court filed his state habeas petition (122 days), and adding to them the number of days that elapsed between October 25, 2004, when the Georgia Supreme Court denied Taylor's application for a certificate of probable cause to appeal, and July 8, 2005, when Taylor delivered his federal habeas petition to the prison authorities for filing (256 days).

[8] In contrast to many of our cases analyzing the "properly filed" language, the question before us today requires an inquiry focused on when the proper filing occurred rather than whether a proper filing ever occurred. For a discussion of this latter and more complex inquiry, see Siebert v. Campbell, 334 F.3d 1018 (11th Cir. 2003).

[9] The understandable explanation for this judicial silence is that Georgia did not establish a limitations period for the filing of habeas petitions until 2004. See 2004 Ga. Laws Act 661 (codified as amended at O.C.G.A. § 9-14-42).

623 F.2d 924, 926 (5th Cir.1980) (citations omitted).[10] We must anticipate what the Georgia Supreme Court would say. See Ernie Haire Ford, Inc. v. Ford Motor Co., 260 F.3d 1285, 1290 (11th Cir. 2001).

In Massaline v. Williams, 554 S.E.2d 720, 722-23 (Ga. 2001), the Georgia Supreme Court adopted the mailbox rule when a pro se prisoner seeks to appeal from a superior court decision denying his habeas corpus petition. Adopting the reasoning of Houston v. Lack, 487 U.S. 266, 108 S. Ct. 2379, 101 L. Ed. 2d 245 (1988), the Massaline court recognized that a mailbox rule was necessary because of the "unique obstacles" faced by pro se prisoners:

> Unlike litigants who are not incarcerated, pro se prisoners cannot monitor the processing of their appellate filings to ensure that the clerk of the court timely receives them. . . . And, of course, being pro se, they cannot rely on their lawyer to ensure the safe and timely filing of their appeals. Pro se prisoners also must entrust their legal papers to the prison officials, even though the warden is typically the named defendant in a habeas corpus action.

Massaline, 554 S.E.2d 720 at 552-53 (citing Houston, 487 U.S. at 270-72, 108 S. Ct. at 2382, 101 L. Ed. 2d 245).

The rationale of Massaline applies equally in the case at hand. We discern no basis for distinguishing between a pro se prisoner filing a habeas petition and a

---

[10] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent decisions of the former Fifth Circuit handed down prior to October 1, 1981.

pro se prisoner filing a habeas appeal, and we have no reason to believe that the Georgia Supreme Court would find one. "[A]dopting a mailbox rule for pro se prisoners promotes judicial fairness and helps assure that habeas corpus cases are decided on the merits and not the overly technical application of procedural rules." Id. at 722.[11]

We therefore hold that Taylor's state habeas petition was "properly filed" when Taylor deposited it into his prison's mail system on January 17, 2001. This was three days prior to the expiration of AEDPA's one-year limitations period and thus was timely. The judgment of the district court is accordingly vacated, and the case is remanded for further proceedings.

VACATED and REMANDED.

---

[11] The Georgia Supreme Court's concern for pro se prisoners seeking habeas relief does not extend to pro se prisoners seeking non habeas relief. As the court stated in Riley v. State, 626 S.E. 2d 116, 117 (Ga. 2006), "the mailbox rule established in Massaline does not exempt a pro se prisoner from complying with the statutory requirements to file a timely notice in any non habeas criminal or civil filing." See, e.g., Mingledorff v. Stokely, 477 S.E.2d 374, 775 (Ga. Ct. App. 1996) (rejecting the mailbox rule in the context of a negligence action brought by a prisoner proceeding pro se). This distinction is grounded in Georgia's vigorous protection of "a pro se prisoner's ability to pursue his constitutional right to habeas corpus." Massaline v. Williams, 554 S.E.2d 720, 722 (Ga. 2001); see also Ga. Const. art. I, § 1, ¶ XV.

COX, Circuit Judge, dissenting:

My guess is that the Georgia Supreme Court would decide this case the same way today's court decides it. The result is certainly equitable. A decision to certify a question of state law to the supreme court of that state is a discretionary one, *Escareno v. Noltina Crucible & Refractory Corp.*, 139 F.3d 1456, 1461 (11th Cir. 1998), but in my view a proper exercise of our discretion in this case requires certification. Along the way to reaching the result the court reaches today it overrules *sub silentio* some Georgia precedent and decides an important question of Georgia law.

Today's decision finds little support in Georgia precedent. Georgia's Civil Practice Act ("CPA"), Ga. Code Ann. §§ 9-11-1 to -133, "applies in habeas corpus proceedings with regard to questions of pleading and practice." *Rolland v. Martin*, 637 S.E.2d 23, 24 (Ga. 2006) (quoting *State v. Jaramillo*, 620 S.E.2d 798, 800 (Ga. 2005). Under the CPA, "[a] civil action is commenced by filing a complaint with the court." Ga. Code Ann. § 9-11-3(a). Thus in Georgia, a petition for a writ of habeas corpus is "properly filed" with the court. Georgia has not liberally interpreted the phrase "with the court." "While some federal courts allow pro se inmates to file certain civil pleadings with the jailer, such a rule does not prevail in Georgia. 'A civil action is commenced by filing a complaint with the court.' And

9

filing 'with the court' does not mean depositing the complaint in the mail."

*Mingledorff v. Stokely*, 477 S.E.2d 374, 375 (Ga. Ct. App. 1996) (citations omitted). Nothing in *Massaline v. Williams*, 554 S.E.2d 720 (Ga. 2001), or in any other Georgia decision, overrules precedent that a civil action is commenced by a proper filing "with the court."

The habeas appeals statute at issue in *Massaline*, Ga. Code Ann. § 9-14-52(b), includes a similar requirement, that habeas appeals must be filed "with the clerk." Over a vigorous dissent, the supreme court held, consistent with other Georgia statutes including a "with the clerk" requirement, that a prisoner's notice of appeal and certificate of probable cause to appeal denial of habeas relief are deemed filed "on the date [the prisoner] delivers them to prison authorities for forwarding to the clerks of this Court and the superior court . . . ." 554 S.E.2d at 722-23. But, Georgia courts have not yet expanded this narrow and judicially-created exception, which, before today, applied only to habeas appeals.

In *Riley v. State*, 626 S.E.2d 116 (Ga. 2006), the Georgia Supreme Court said, "*Massaline* . . . by its explicit terms applies only in the narrow context of habeas corpus appeals to permit a pro se prisoner's notice of appeal to be deemed filed on the date delivered to prison authorities." *Id.* at 117. Although the issue before the *Riley* court was not whether the mailbox rule applied to initial habeas

10

filings, the court twice explicitly limited *Massaline*'s application to "appeals."

Also, in *McCroskey v. State*, ---S.E.2d---, No. 07-2173, 2008 WL 518219 (Ga. Ct. App. Feb. 28, 2008), the Georgia Court of Appeals refused to extend *Massaline* to a *pro se* prisoner's notice of direct appeal.

Two federal district courts in Georgia, the Northern and Middle Districts, have relied on *Riley* in holding, in unpublished opinions, that the mailbox rule does not apply to initial habeas filings. *See Phillips v. Brown*, No. 07-01601, 2008 WL 140712, *3 n.2 (N.D. Ga. Jan. 11, 2008) (citing *Riley*) ("[I]t appears that, under Georgia law, this [prison mailbox] rule does not apply to the original filing of a state habeas petition."); *Green v. Nelson*, No. 06-00120, 2007 WL 2460770, *3 (M.D. Ga. Aug. 24, 2007) (citing *Riley*) ("The Georgia Mailbox rule does not apply to the filing of the original state habeas petition, only to the *application for certificate of probable cause to appeal and the notice of appeal* of the state habeas petition.").

I would certify the question to the Georgia Supreme Court.